**UNITED STATES v. BREMER.**

Nos. 13612, 13613.

United States Court of Appeals Ninth Circuit.

Sept. 30, 1953.

248

J. Charles Dennis, U. S. Atty., John E. Belcher, Asst. U. S. Atty., Seattle, Wash., for appellant.

Charles S. Burdell, Gordon McLean Callow & Clavin C. Culp, Seattle, Wash., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

HEALY, Circuit Judge.

This appeal is from an order granting a petition to set aside and vacate sentences and judgment against appellee, herein for convenience referred to as Bremer. The proceeding was brought pursuant to the provisions of 28 U.S.C.A. § 2255.

The record shows that on June 1, 1951, Bremer was charged by information with a violation of 18 U.S.C.A. § 2312 in that he transported a stolen motor vehicle from Miami, Florida, to Seattle, Washington, knowing it to have been stolen. At the same time he was charged by information, laid under 18 U.S.C.A. § 2314, with having feloniously transported and caused to be transported from Seattle to Chicago a falsely made and forged security, namely a forged check. After arraignment and pleas of guilty Bremer was sentenced to five years imprisonment on each charge, the sentences to run concurrently.

The Section 2255 proceeding was begun a year later and was heard before the judge who had taken the pleas and imposed the sentences. As amended by counsel appointed by the court, Bremer's petition alleged that the pleas of guilty were entered without effective assistance of counsel and "under and by reason of a misunderstanding and mistake as to the applicable law and without having been advised of the applicable law and the fact that effective defenses were available against each of the aforesaid charges; that petitioner is advised and believes * * * that at the time of accepting said pleas the court was not advised of the fact that effective defenses were available."[1] The nature of the "effective defenses" is not spelled out in the petition.

At the hearing various witnesses, including Bremer, testified. The court found that counsel, who had been appointed at the time of the arraignment, had had sufficient time to consult with the accused before entry of the pleas; that no assurances of leniency had been given; and that the pleas of guilty were entered freely and voluntarily without coercion of any sort. However, the court found that in the case involving the transportation in commerce of the allegedly stolen automobile Bremer had acquired title by means of a worthless check drawn on a bank in which he knew he had insufficient or no funds, and that before or shortly after sentence was pronounced the accused had informed his counsel to that effect. The court was of opinion that on these facts the car was not "stolen" within the meaning of that word as used in the statute, hence Bremer's plea had been entered in the erroneous belief that he was guilty of the charge laid in the information. As regards the charge under 18 U.S.C.A. § 2314, the court found that Bremer had forged the security in question in Seattle, and such being the case he had not transported it in interstate commerce as charged in the information. The conclusion drawn from these findings was that the court lacked jurisdiction to impose

---

[1] The points raised in the original petition, evidently prepared by Bremer himself, were somewhat different. There he contended that the pleas of guilty were entered on the advice of court-appointed counsel, upon the assurance of probation officers and counsel that a light sentence would be granted. A further contention was that the petitioner "has evidence to present which was not available to him at the time of trial, and which is therefore new evidence, which is sufficient to justify a new trial."

sentence in either of the cases. The sentences were ordered vacated and Bremer discharged from further imprisonment.

Several arguments for reversal are pressed upon us by the government. One is the general contention that in a Section 2255 proceeding only such grounds may be urged as would be available in a habeas corpus proceeding; and that a plea of guilty in circumstances such as obtained here constitutes a waiver of all nonjurisdictional defenses and an admission of all the facts averred in the indictment.[2] Another point relates immediately to the Dyer Act charge, that is, to the transportation in interstate commerce of the allegedly stolen motor vehicle. The government argues, and presents considerable authority in support of its position,[3] that there is violation of the statute whenever the intent to steal is formed, regardless of the means by which the transporter originally came into possession of the car. Neither of these controversial questions appears to have been passed upon by this court, and for reasons to be given we feel it inopportune to rule upon them now. The court was plainly in error in vacating the sentence imposed in the case laid under 18 U.S.C.A. § 2314 and in ordering Bremer's release from imprisonment; and since his five-year term under this charge was to run concurrently with the like term imposed under the Dyer Act charge it is of no moment whether the court's ruling with respect to the latter was right or wrong.

The information under 18 U.S.C.A. § 2314 reads as follows:

"That on or about April 15, 1951, John Harry Bremer, Jr., with unlawful and fraudulent intent, did knowingly and unlawfully transport and cause to be transported in interstate commerce, to-wit, from Seattle, in the Northern Division of the Western District of Washington, to Chicago, State of Illinois, a falsely made and forged security reportedly [sic] signed by Hanson-Bennett Magazine Agency, by Preston C. Beck, president, payable to John H. Bremer, Jr., in the sum of $292.17, and said security was a falsely made and forged security in that the signature, 'Preston C. Beck' was false and forged and the same John Harry Bremer, Jr., at all times herein referred to knew the purported signature of Preston C. Beck was false and forged."

The record on the original hearing shows that prior to the arraignment Bremer and his counsel had received a copy of this information, and that upon arraignment the court read it to the accused and asked him whether he understood the nature of the charge, to which Bremer replied that he did. He said further that he was ready to enter his plea and that his plea was guilty.

In the instant proceeding the court apparently misconstrued both the charge and the testimony relative to it. It observed that according to the testimony of Bremer the latter forged and cashed the check in question in Seattle. "Whether he forged it here or elsewhere," said the court, "is the crucial question for decision under that particular charge, for obviously if the document had not been forged prior to the interstate transportation he would not be guilty of the offense alleged in that particular count."

However, the charge was that the accused did knowingly transport the check *and cause it to be transported* in interstate commerce, that is, from Seattle, Washington, to Chicago, Illinois. On the Section 2255 hearing Bremer admitted that he forged and cashed the check described in the information at a downtown store in Seattle. Following is his testimony on the subject:

"Q. You signed the name Preston C. Beck to that check, is that correct? A. Yes.

---

2. Among the authorities cited in support of this proposition is United States v. Gallagher, 3 Cir., 183 F.2d 342.

3. See, for example, Davilman v. United States, 6 Cir., 180 F.2d 284.

"Q. But that act of signing the check was performed in Seattle, is that correct? A. Yes, sir. I signed two names to that check, sir—Preston C. Beck and my own. I signed Preston C. Beck on the front and my own on the back. I used the man's pen to sign both names.

"Q. Both signatures were performed here in Seattle? A. Yes, sir.

"Q. You gave the man the check in return for some merchandise, is that it? A. There was a few dollars of merchandise, I don't remember what the exact amount of merchandise was but I received forty some dollars in cash and it left a considerable balance yet on the check. I told the man, after he found out whether the check was valid or not, that I would be in town over the week end and would come back Monday to pick up the balance. I knew, of course, by that time the check would be in San Francisco—not sufficient funds."

Obviously Bremer knew that the forged check, being drawn on an outstate bank, would in the normal course be transported in interstate commerce to the bank on which it was drawn. His memory as to the location of the institution seems to have been at fault, since he mentioned San Francisco rather than Chicago as the situs of the drawee bank. The mistake would seem to be immaterial. In either event he knew that the check would be sent across state lines.

In United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359, a case involving the same character of charge as here, the court held that one who cashes a forged check, knowing it to be forged and that it will be forwarded across state lines to the drawee bank, is guilty of causing it to be transported in interstate commerce if the instrument is actually so forwarded. Counsel for Bremer point out that the Sheridan case was decided under the law as it existed prior to 1948, at which time the statute spe-

cifically included the phrase "or cause to be transported." In the judicial code revision of 1948 this phrase was deleted, and it is argued that the Sheridan holding is no longer authority. However, the reviser's notes to § 2314 state that "Reference to persons causing or procuring was omitted as unnecessary in view of definition of 'principal' in section 2 of this title." Title 18, § 2 states: "(b) Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such." Thus it is evident that no substantive change was intended.

Because of the guilty plea the check never became part of the record, nor was it introduced in the Section 2255 proceeding. However, it is plainly inferable that it had been forwarded to the bank on which drawn and was there dishonored. Neither in his petition nor in the course of the hearing below did Bremer allege or offer to prove that the forged instrument was not so forwarded. Nor did he in this court contend that it was not forwarded.

■■ Plainly the burden rested on the petitioner of showing or offering to show that a defense of this nature was available if in fact it was claimed to exist. In United States v. Moore, 166 F.2d 102, at page 104, the Seventh Circuit observed; "We take it that there can be no question but that when it is sought to set aside or vacate a judgment, whether by complaint in equity or by way of coram nobis or its modern equivalent, a motion to vacate, such as we have before us, no relief can be granted unless it appears that a retrial will result in a judgment different from the one sought to be vacated and that, in the absence of such a showing, the judgment will not be set aside. The reason for this rule is that if defendant has no valid defense, so that a second trial must result in an identical judgment, then no actual injury has occurred and it would be a vain and idle thing to set aside the judgment already entered. As a corollary, it is not sufficient to aver merely,

in general terms, that defendant has a good and meritorious defense but the nature of that defense, the facts constituting it, must be set forth in such detail as to enable the court to determine whether it is meritorious and sufficient." For this proposition the court cites and analyzes numerous authorities. We entertain no doubt of the correctness of the principle stated.

The judgment vacating the sentence predicated on 18 U.S.C.A. § 2314 and ordering the petitioner's release from imprisonment is set aside and reversed.